[No. 1929-3.   Division Three.   August 31, 1977.]

*In the Matter of the Receivership of*
RICHLAND HYATT HOUSE, INC.

*Edmund J. Jones,* for appellant.

*Rembert Ryals* and *Critchlow, Williams, Ryals & Schuster,* for respondent.

GREEN, J.—Wesley H. Seelye, a stockholder of Richland Hyatt House, Inc. (Hyatt), filed a petition to terminate the receivership of that corporation and distribute its assets to its stockholders. The receiver, Clifton LaHue, answered and petitioned to close the receivership by distributing the assets to the creditors of Richland Marina, Inc. (Marina) and Hyatt, after payment of certain fees. The trial court granted the receiver's petition and Mr. Seelye appeals. Aside from a challenge to the sufficiency of the evidence to support several findings of fact, Mr. Seelye raises issues of collateral estoppel and the statute of limitations. We affirm.

In the early 1960's, Richland Marina, Inc., held two leases from the City of Richland. Under one lease it undertook to develop a marina along the Columbia River. The other lease covered a site for a planned motel. The promotion of the motel did not materialize and many of those involved became unpaid creditors of Marina. In 1964, new life was generated in the motel promotion by the interest of a building contractor. In order to obtain financing, a plan was devised to form a new corporation, Richland Hyatt House, Inc., which would become a partner in a limited partnership called Richland Hyatt House Associates. The Associates would include creditors and investors of Marina. Under the plan, the motel site lease would be assigned to Hyatt, who would be the managing partner in the Associates. The stock in Hyatt was issued to three stockholders but was not intended to have any value. Consequently, a commitment for a loan to construct the new motel was obtained. In 1965, Charles Opgenorth, a stockholder in Hyatt and Marina and a primary promoter of the whole venture, died. The contractor was left in control and the

remaining months of 1965 were filled with meetings of creditors and investors in an attempt to salvage something from their efforts.

In January 1966, the contractor sold his stock to Keystone Investment Co., subject to the same obligations that the contractor had assumed. Three individuals from Keystone were elected to the board of directors and became officers of Hyatt. The new board decided to sell the motel site lease, Hyatt's only asset. Such a sale required the consent of the Richland City Council. Minutes of the Council indicate that these three individuals promised that the purchase price of the lease ($113,000) would be used to pay claims of Marina creditors. Instead, $65,650 was misappropriated from Hyatt funds in March 1966 by two of Keystone's representatives and, later, the third individual disappeared with the balance of Hyatt's funds.

In February 1967, Mr. LaHue, a certified public accountant, was appointed receiver of Marina. Mr. LaHue, as receiver, and Mr. Opgenorth's widow, Mrs. Emerick, a stockholder in Hyatt, commenced an action against Keystone to recover the misappropriated money.[1] In that action these coplaintiffs sought a recovery for the benefit of Marina, claiming that the assignment of the motel lease by Marina to Hyatt was in consideration of Hyatt's assumption of the claims of Marina's creditors. Later, Mrs. Emerick amended her complaint to allege a derivative stockholders action for the benefit of Hyatt, its stockholders and others claiming an interest in Hyatt. Although Hyatt was not a party to that action, the court entered judgment for Hyatt and "the stockholders thereof." On appeal from this judgment, the court reversed that portion entered in favor of the stockholders and affirmed the portion in favor of Hyatt. *LaHue v. Keystone Inv. Co.*, 6 Wn. App. 765, 496 P.2d 343 (1972). After the trial court's judgment in *Keystone* and before the appeal was initiated, Mr.

---

[1] For a detailed statement of the factual background surrounding this case, *see* *LaHue v. Keystone Inv. Co.*, 6 Wn. App. 765, 496 P.2d 343 (1972).

LaHue resigned as receiver of Marina and was appointed receiver of Hyatt. In the present case, Mr. LaHue's petition to disburse the proceeds of the *Keystone* judgment, after payment of certain expenses and fees, to creditors of Marina and Hyatt on a pro rata basis was approved by the trial court, and this appeal followed.

First, Mr. Seelye contends that the judgment in *LaHue v. Keystone Inv. Co., supra,* collaterally estops the trial court from approving Mr. LaHue's proposed distribution to the creditors of Marina. We disagree.

■ In *Lucas v. Velikanje,* 2 Wn. App. 888, 894, 471 P.2d 103 (1970), we summarized the requirements for the application of collateral estoppel as follows:

> [A]ffirmative answers must be given to the following questions: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Will the application of the doctrine not work an injustice on the party against whom the doctrine is to be applied?

(Citations omitted.) Mr. Seelye contends that the trial court's finding in *Keystone* that:

> At no time did Richland Hyatt House, Inc. ever assume any of the obligations of Richland Marina, Inc., or make any agreement to pay such obligation.

and its conclusion of law that the

> cause of action of Clifton LaHue as a receiver of Richland Marina, Inc. has not been sustained by the evidence because there is . . . no evidence that Richland Hyatt House, Inc., ever agreed to assume and pay the liabilities of Richland Marina, Inc. or any of them.

prevent a distribution in this case to the creditors of Marina. He points out that the opinion in *Keystone* determined that this finding was based upon substantial evidence. Were it not for the other language in the *Keystone* opinion, Mr. Seelye's argument might be more persuasive. In striking down judgment in favor of the stockholders of

Hyatt, to whom Mr. Seelye contends all of the funds should be distributed, the court in *Keystone* at page 781, said:

There may well be third party rights whose priority is higher than that of the stockholders. We should not foreclose third parties not before the court, *nor for that matter should we foreclose the plaintiffs from asserting whatever rights they may have against the corporation. Our determination here is only as between the plaintiffs and the defendants.*

(Italics ours.) It is evident from this language that the court in *Keystone* did not intend to foreclose the trial court in the present case from litigating the issues involved in distributing the assets in Hyatt's receivership. This is understandable. The trial court in *Keystone* refused to award a judgment to either plaintiffs;[2] in essence, the judgment was entered for Hyatt from whom the money had been misappropriated and left the disposition of those funds to future proceedings. The issue in *Keystone* was the liability of Keystone Investment Co. for repayment to Hyatt of the misappropriated funds. Once liability was established, the court rejected both plaintiffs' claims and entered judgment for Hyatt.

Thus, we conclude that collateral estoppel should not be applied in this case because (1) the issue of Marina creditor rights in *Keystone* was only tangential to the real issue of the liability of Keystone Investment Co., and (2) the *Keystone* opinion on appeal expressly limits its holding to that issue and does not "foreclose the plaintiffs [Marina creditors and Mrs. Emerick, representing stockholders] from asserting whatever rights they may have against the corporation [Hyatt]." Consequently, the first requirement for collateral estoppel expressed in *Lucas v. Velikanje,*

---

[2]Carried to its logical conclusion, it could be argued that Mr. Seelye's position that collateral estoppel applies would foreclose distribution to any of the stockholders, including himself, because Mrs. Emerick's derivative claim was denied in *Keystone.*

*supra,* has not been met. We find no error in the trial court's refusal to apply the doctrine of collateral estoppel.

Second, Mr. Seelye contends the Marina creditor claims are barred by the statute of limitations. Mr. Seelye does not contend that the creditor claims accepted by Mr. LaHue in the Hyatt receivership were not properly filed and approved in the Marina receivership. Mr. Seelye at no point questions the validity of any of the Marina creditor claims; he only contends that because the claims were not asserted in the Hyatt receivership, they are unenforceable because of the statute of limitations. We disagree.

■ Under the evidence and the findings of the trial court, it is clear that everyone involved in the promotion of the motel, including Mr. Seelye, understood that the Marina creditors would be protected. In fact, when it became apparent the venture could not succeed, many meetings were held in an effort to find a way to realize something for the creditors and investors of Marina, Hyatt, and the Associates. In light of all the circumstances, equity must operate to estop Mr. Seelye from asserting the statute as a bar to the court's approval of the receiver's proposed distribution. Moreover, the claims, having been validly filed in the Marina receivership, need not be reestablished in the Hyatt receivership. To require a refiling in the Hyatt receivership would require the performance of a useless act, considering all the circumstances revealed in this case. In light of our holding, we do not reach Mr. Seelye's contention that a receiver cannot waive the statute of limitations. There is no error.

■ Finally, error is assigned to various findings of fact including those authorizing payment of certain fees and expenses. After a careful review of the record, we find substantial evidence to support those findings and they will not be disturbed.

Affirmed.

MUNSON, C.J., and MCINTURFF, J., concur.

Petition for rehearing denied October 3, 1977.

Review denied by Supreme Court March 17, 1978.