**Louis Michael OBER, Plaintiff-Appellee Cross-Appellant,**

v.

**PENROD DRILLING COMPANY, Defendant-Appellant Cross-Appellee.**

No. 81–3054
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 29, 1982.

---

Patrick A. Juneau, Jr., Kathleen A. Manning, Lafayette, La., for Penrod Drilling Co.

Leonard Fuhrer, Alexandria, La., for Louis Michael Ober.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

PER CURIAM:

Louis Michael Ober filed suit for damages against his employer, Penrod Drilling Company, to recover for injuries sustained during the course and scope of his employment as a crew member aboard Penrod Rig # 51 on July 31, 1978. Jurisdiction was founded on the Jones Act, 46 U.S.C. § 688, and under the general maritime law. Trial was before the district judge sitting in admiralty who rendered Findings of Fact and Conclusions of Law and a Judgment in accord therewith, finding Penrod responsible for the injury to Ober.

On the day of his accident, plaintiff was working as a floorhand or roughneck for his employer, Penrod Drilling Company, on one of its submersible drilling vessels. The crew was "coming out of the hole," *i.e.,* withdrawing drill pipe from the drill site. Ober was working the "lead tongs"—a large wrench-like device that is applied to disengage or unscrew two pieces of drill pipe. The driller controls how fast and hard the pull is on the handle of the tongs. The torque (force) exerted on the lead tongs is supposed to "break" (release) the tool joint so that other forces can then unscrew the two pieces of drill pipe.

To counteract the torque of the lead tongs and permit them to break the joint, the pipe below the tool joint needs to be

held in position so that it will not rotate around with the lead tongs. The function of immobilizing the pipe below the joint still in the hole is accomplished with another wrench-like device, applied below the tool joint to be broken, called back-up tongs. Defendant's general safety rules required that breaking drill pipe be accomplished with both sets of tongs. Both sets of tongs were not being used, however, when the accident occurred.

It was under these circumstances that McNatt, the driller, with the plaintiff in full view, applied the power to the lead tongs in order to break them apart. McNatt gave no warnings prior to applying the power and when he did so, the handle of the lead tongs swung toward plaintiff, striking him with great force and causing his injuries.

After careful study of the district court's findings of fact and conclusions of law in this personal injury case pursuant to the Jones Act and the general maritime laws of the United States, we affirm the judgment of defendant's liability under the Jones Act.[1] In light of *Culver v. Slater Boat Co.,* 688 F.2d 280 (5th Cir.1982) (*en banc*) and *Byrd v. Reederei,* 688 F.2d 324 (5th Cir. 1982) (*en banc*), however, we remand for reconsideration of the damages award in the amount of $393,588.67.

 The clearly erroneous standard governs this Court's review of the district court's fact findings. Fed.R.Civ.P. 52(a); *Noritake Co. v. M/V Hellenic Champion,* 627 F.2d 724, 727–28 (5th Cir.1980). Under the Jones Act, a vessel owner is deemed negligent if he fails to exercise reasonable care to maintain a reasonably safe work environment. *See Allen v. Seacoast Products, Inc.,* 623 F.2d 355, 361 (5th Cir.1980); *Ivy v. Security Barge Lines, Inc.,* 585 F.2d 732 (5th Cir.1978), *modified on other grounds,* 606 F.2d 524 (5th Cir.1979) (*en banc*), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980); Jones Act, 46 U.S.C. § 688 (1975). A review of the record in this case does not leave this Court with the definite and firm conviction that the district court erred in its finding of Jones Act negligence. The fact that defendant permitted the lead tongs to swing recklessly, either by the driller's failure to use back-up tongs in violation of defendant's safety rule or by the driller's application of too much torque, was sufficient to support the district court's finding of a breach of Penrod's duty to furnish plaintiff with a reasonably safe place to work within Jones Act standards.

 On the issue of damages, this Court remands to the district court to reconsider its calculation of plaintiff's damages in light of the *Culver* and *Byrd* decisions. The record reveals that the parties were given an opportunity to introduce the evidence allowed by *Culver* and *Byrd.*[2] The district court, however, applied the *Alaska* Rule[3] in awarding damages. Since this Court's decision in *Culver,* although not precluding use of this rule, is quite critical of it,[4] we have decided to remand for reconsideration of the district court's decision to adopt this rule. On remand, the district court need only reconsider its choice of a method of calculation.[5] The court's finding

---

1. Because we uphold the judgment on the basis of the district court's finding of negligence under the Jones Act, we do not consider the unseaworthiness finding.

2. Plaintiff's economic expert gave testimony pertaining to likely wage increases due to inflation, productivity, and seniority. In so doing, he presented statistics on occupational wage increases and on average state wage increases. On cross-examination of plaintiff's economic expert, defendant brought out the interest rate available on risk-free investments.

3. Under the *Alaska* Rule, inflation offsets the interest rate which can be earned on safe investments, *i.e.,* inflation and the discount rate offset each other.

4. In *Culver* this Court stated: "[W]e are less than satisfied with the ... *Alaska* Rule," and "the *Feldman* [*v. Allegheny Airlines, Inc.,* 524 F.2d 384] approach ... is clearly superior, and more economically sound, than ... the *Alaska* Rule." *Culver,* at 299, 302.

5. Plaintiff raises two other arguments on cross-appeal: (1) in determining future economic losses, it should be taken into consideration

of fact that plaintiff is capable of securing employment at $12,000 per year is upheld as not clearly erroneous.

AFFIRMED IN PART, REMANDED IN PART.

that plaintiff must pay a certain percentage of his recovery to his attorney, and (2) plaintiff is entitled to an award for attorney's fees and for the mental anguish he suffered as a result of defendant's failure to discharge its maintenance and cure obligations in a timely fashion. The first argument basically proposes that the burden of paying plaintiff's attorney's fees be borne by defendant. It is a well-established rule that legal expenses are not reimbursable in actions to recover damages for injuries caused by negligence under the Jones Act or unseaworthiness under general maritime law. With respect to plaintiff's second argument, the cases he cites do not support such an award on the basis of untimely payment alone. *See Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962) (plaintiff was forced to hire a lawyer and go to court in order to obtain maintenance and cure); *Blanchard v. Cheramie,* 485 F.2d 328 (5th Cir.1973) (upholding jury's decision not to award damages for suffering and attorney's fees for the vessel owner's refusal to pay maintenance and cure). In this case, Penrod's tardiness in payment cannot fairly be categorized as "callous," "recalcitrant," "willful," and "persistent" as described in *Vaughan.*