[No. 14229–1–I.   Division One.   May 21, 1986.]

*In the Matter of the Guardianship of*
IAN KARL EISENBERG, ET AL.

JUNE A. EISENBERG, *as Guardian,* ET AL, *Appellants,* v.
ARTHUR JOEL EISENBERG, *Respondent.*

*R. George Ferrer* and *Montgomery, Purdue, Blankinship & Austin,* for appellants.

*Albert Hanan,* for respondent.

SCHOLFIELD, C.J.—Lisa Yvette and the guardianship of Ian Karl Eisenberg appeal the trial court's determination that the liability to them of their guardian, Arthur Joel Eisenberg (Joel), did not include amounts due on certain aircraft leases between the guardianships and companies controlled by Joel.

Joel Eisenberg and his then wife, June Eisenberg, operated several related businesses, including a nonprofit air travel club known as Air Club International, a travel agency known as International Travel, Inc., and American Aviation Services, Inc., which later merged into Aeroamerica, Inc., an air charter company. Joel petitioned the superior court to be appointed guardian of the estates of his two minor children, Yvette and Ian, in August 1973.

At the time the guardianships were initiated, Joel purchased five Boeing aircraft and sold one to each guardianship. Yvette's estate purchased N734T with funds acquired from gifts to her, along with a loan of $154,000 from Air Club and its Canadian affiliate, ACI, Ltd. Ian's estate purchased N736T with funds acquired from gifts to him, along with a loan from Joel of $153,000.

In September 1973, Joel sought and received court approval to lease Yvette's plane (N734T) to Air Club for a 5-year term. Joel did not disclose to the court his own involvement with Air Club. In March 1974, without court approval, Joel replaced this lease with a new lease agreement between Yvette and Aeroamerica. Air Club filed bankruptcy in the spring of 1975. Yvette's plane continued under lease to Aeroamerica until July 1979. Aeroamerica filed for bankruptcy in November 1979.

After the Aeroamerica lease of N734T expired, Joel leased the plane to a movie company as a prop for $8,900, which was deposited into the Aeroamerica account and never paid to the Yvette guardianship. Following this, Joel directed the dismantling and sale of N734T for parts. The

reasonable scrap value of $49,350 was not deposited into the Yvette guardianship account.

As for Ian's plane, Joel sought and was granted the court's permission to lease it to Air Club for 5 years. Here again, there was no disclosure to the court of his control of Air Club. In 1975, following Air Club's bankruptcy, Joel petitioned the court for approval to lease N736T to Aeroamerica. While he was debtor in possession of Aeroamerica, Joel extended the lease of N736T to Aeroamerica for an additional 5 years.

In its order fixing final accounting, the trial court listed the following as the assets of the guardianships:

[Yvette's guardianship:]

| Asset | Amount |
|---|---|
| Cash on hand as of August 17, 1982 | $29,555.92 |
| Account receivable from Aeroamerica, Inc., for unpaid aircraft lease payments | 1,562,125.00 |
| Account receivable from Air Club International | 21,000.00 |
| Claim against A. Joel Eisenberg for funds received as rental of N734T as movie "prop" | 8,900.00 |
| Parts removed from N734T and converted by A. Joel Eisenberg | 49,350.00 |
| Claim against A. Joel Eisenberg for legal fees and expenses incurred in obtaining his final accounting | 11,500.00 |
| One Boeing 720–027 aircraft, Serial No. N734T | (In process of scrapping) |

[Ian's guardianship:]

| Asset | Amount |
|---|---|
| Cash on hand as of August 17, 1982 | $99,664.16 |
| Account receivable from Air Club International for unpaid lease payments | 226,500.00 |
| Account receivable from Aeroamerica, Inc., for unpaid lease payments through 1979 | 306,000.00 |
| Unpaid lease payments from Aeroamerica thereafter | 328,905.00 |

| | |
|---|---|
| Unpaid balance on loan from A. Joel Eisenberg | (15,375.97) |
| Claim against A. Joel Eisenberg for legal fees and expenses incurred in obtaining his final accounting | 38,500.00 |
| One Boeing 720–027 aircraft, Serial No. N736T | 50,000.00[1] |

In August 1982, Joel was removed as guardian of both estates and, ultimately, his ex–wife, June, was appointed as successor guardian. The court directed that Joel appear for a final accounting of the guardianships.

On December 13, 1983, the trial court found that Joel failed to perform his guardianship duties as required by RCW 11.92.040.[2] The trial court found that Joel failed:

---

[1]The record does not provide a complete accounting of the guardianships. The net amounts listing the assets of the guardianships appear to have taken into account the loans which were used to purchase the aircraft.

[2]RCW 11.92.040 provides in pertinent part:
"It shall be the duty of the guardian or limited guardian:
"(1) To make out and file within three months after his or her appointment a verified inventory of all the property of the incompetent or disabled person which comes to his or her possession or knowledge, including a statement of all encumbrances, liens, and other secured charges on any item;
"(2) To file annually, within thirty days after the anniversary date of the guardian's or limited guardian's appointment, and also within thirty days after termination of the appointment, a written verified account of the administration: *Provided,* That the court in its discretion may allow reports at intervals of up to thirty–six months, with instruction to the guardian or limited guardian that any substantial increase in income or assets or substantial change in the incompetent's or disabled person's condition shall be reported within thirty days of the substantial increase or change;
". . .
"(4) If he or she is a guardian or limited guardian of the estate, to protect and preserve it, to apply it as provided in this chapter, to account for it faithfully, to perform all of the duties required by law, and at the termination of the guardianship or limited guardianship, to deliver the assets of the incompetent or disabled person to the persons entitled thereto. Except as provided to the contrary herein, the court may authorize a guardian or limited guardian to do anything that a trustee can do under the provisions of RCW 11.98.070 for a period not exceeding one year from the date of the order or for a period corresponding to the interval in which the guardian's or limited guardian's report is required to be filed by the court pursuant to subsection (2) of this section, whichever period is longer;

(a) to file annually within 30 days after the anniversary date of his appointment, a written verified account of his administration, (b) to file a written verified final account within 30 days after termination of his appointment on August 17, 1982, (c) to advise the court of the various leases and encumbrances affecting the assets of his wards and obtain the court's consent or approval thereof, (d) to collect certain debts due and owing the guardianship estates arising out of the sale of spare parts and the use of the aircraft for a movie, (e) to obtain court approval for the subordination of the claims due the guardianship estates in the bankruptcy case, (f) to prudently manage the assets of the guardianship estates, (g) to give the guardianship estates his undivided loyalty and avoid conflicts of interest, or to carry out the other responsibilities imposed by law.

Finding of fact 52.

The court also found that Joel's failure to perform these duties was not the proximate cause of loss to the guardianships, and therefore Joel was not personally liable for these losses. The court reasoned as follows:

His failure as an officer of Aeroamerica to apply funds of Aeroamerica to payment of the lease rentals did not necessarily result in loss to the guardianships because as a practical matter, had he done so, it could have been reasonably anticipated that various agencies scrutinizing Joel's and June's and their companies' financial activities might have moved to have some of the payments set aside as being in fraud of the rights of creditors and as an unfair preference in favor of the family of Joel and June.

Finding of fact 54.

The court also found that prior to and during the pendency of the bankruptcy proceedings of Aeroamerica, Joel removed funds from Aeroamerica to satisfy personal obligations, including $485,000 to the IRS to avoid a tax sale of a residence, salaries of $4,000/month to Joel and June, a salary of $2,500/month to Joel's second wife, Rebecca, and

---

"(5) To invest and reinvest the property of the incompetent or disabled person in accordance with the rules applicable to investment of trust estates by trustees as provided in chapter 11.100 RCW, . . ."

$40,000 to Rebecca for a home purchase.

The trial court granted judgment to Yvette against Joel in the sum of $69,750. This amount consisted of a claim for the funds received for rental of N734T as a movie prop ($8,900), for the reasonable salvage value of the aircraft ($49,350), and for legal fees in the amount of $11,500. Yvette also was granted judgment against Continental/Pacific Insurance Company for $10,000, the amount of the guardianship bond. Ian's guardianship was granted judgment for $38,500 for legal fees incurred.

On January 12, 1984, Ian and Yvette filed a notice of appeal to this court, seeking a reversal of the trial court's refusal to impose personal liability on Joel for the accrued lease payments due them.

### BREACH OF FIDUCIARY DUTY

■ A guardianship has been described as "a trust relation of the most sacred character". 39 Am. Jur. 2d *Guardian and Ward* § 1 (1968). Therefore, analysis of a guardianship question may rely upon an appropriate trust concept.

Liability for losses to a trust is discussed under two sections of the Restatement (Second) of Trusts (1959):

§ 205. Liability in Case of Breach of Trust
    If the trustee commits a breach of trust, he is chargeable with
    (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or
    (b) any profit made by him through the breach of trust; or
    (c) any profit which would have accrued to the trust estate if there had been no breach of trust.

The trustee is liable for losses sustained by the trust which are the result of the trustee's breach.

Section 206 of the Restatement speaks to the breach of the duty of loyalty:

§ 206. Liability for Breach of Duty of Loyalty
    The rule stated in § 205 is applicable where the trustee in breach of trust sells trust property to himself individ-

ually, or sells his individual property to himself as trustee, or otherwise violates his duty of loyalty.

Comments *a* and *b* to section 206 state in part:

The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary. . . .

. . .

. . . The trustee violates his duty to the beneficiary if he sells trust property to himself individually or if he has a personal interest in the purchase of such a substantial nature that it might affect his judgment in making the sale.

Comment *f* to section 205 notes that:

[A] trustee is liable for a loss resulting from a breach of trust. A question may arise, therefore, as to the causal connection between the breach of trust and the loss. If the trustee commits a breach of trust and if a loss is incurred, the trustee may not be chargeable with the amount of the loss if it would have occurred in the absence of a breach of trust.

Comment *f* to section 205 continues its analysis by noting:

On the other hand, where the trustee purchases for the trust, property owned by him individually, and the property depreciates in value, it is immaterial that the trustee could properly have purchased similar property from a third person and that in such a case he would not have been liable for the loss. In order to deter self–dealing by the trustee, he is chargeable with *any loss* which results.

(Italics ours.) Therefore, if a trustee is engaging in self–dealing, he will be liable for all losses to the guardianship arising from his self–dealing transactions. The extent of the liability of a trustee who violates the duty of loyalty is discussed in comment *a* to section 206:

If the trustee commits a breach of his duty of loyalty he is chargeable with any loss or depreciation in value of the trust property resulting from the breach of duty, or any profit made by him through the breach of duty, or any profit which would have accrued to the trust estate if there had been no breach of duty.

In *In re Carlson,* 162 Wash. 20, 297 P. 764 (1931), the

appellant was guardian of the estate of a minor child. The guardian continued to invest guardianship assets in securities of the company of which he was the principal stockholder, despite the fact that the securities had declined in value and that the company ultimately failed. The trial court charged the guardian with the original inventory value of the estate. On appeal, the court found the guardian liable for the full amount of the securities, despite their depreciation, and noted:

> [A]s a general rule, a person occupying a relation of trust or confidence to another is in equity bound to abstain from doing everything which can place him in a position inconsistent with the duty or trust such relation imposes upon him, or which has a tendency to interfere with the discharge of such duty. Upon this principle, no one placed in a situation of trust or confidence in reference to the subject of a sale can be the purchaser, on his own account, of the property sold.

*Carlson*, at 31–32. In *Tucker v. Brown*, 20 Wn.2d 740, 150 P.2d 604 (1944), the court found a trustee liable for the full amount of money he received from the sale of bonds belonging to the trust. The court noted that a trustee who finds himself in a conflict of interest situation has only one choice:

> Where a trustee finds himself in the position where he has, either individually or as trustee for another, an interest which conflicts with that of the beneficiaries of the trust, he should resign from the trust so as not to attempt the impossible task of representing conflicting interests.

*Tucker*, at 769.

Joel arranged for the leasing of guardianship property to corporations in which he had substantial personal interest. He was in charge of the nonprofit organization, Air Club, and he and June were the sole shareholders in Aeroamerica. Joel did not disclose this information to the court when he sought approval for the leases, and certain changes in the leases never received court approval. At the demand of Aeroamerica creditors, Joel agreed to subordinate all Aero-

america obligations due the two guardianship estates to the claims of all other creditors. It is obvious that Joel breached his fiduciary duty of loyalty to the guardianships. We hold that Joel is personally liable to the guardianships for their losses resulting from this breach of the duty of loyalty.

### MEASUREMENT OF LOSSES

In deciding the appropriate sanction to be applied to a trustee who has violated his duty of loyalty, the court must fashion the relief granted so that it will act as a deterrent to the errant trustee and other trustees in the future. The equitable relief granted in each case will vary according to the circumstances of both the beneficiaries and the trustee. G. Bogert, *Trusts and Trustees* § 543(V), at 386–87 (2d rev. ed. 1978).

The net effect of Joel's actions concerning the guardianships' airplanes was to appropriate them for his own use. The most proper measure of damages, therefore, may be found under section 205(c) of the Restatement (Second) of Trusts:

[A]ny profit which would have accrued to the trust estate if there had been no breach of trust.

Therefore, we hold that the guardianships are entitled to damages consisting of the fair rental value of the planes from the time of their purchase until the end of their usage by Joel's corporations, less any rental amounts already paid during that time frame.

Prudent management of the airplanes would require that they be leased at current fair rental values to qualified lessees. Had this been done, it is probable that the guardianships would have received those rentals. Self–dealing by Joel deprived the guardianship of prudent management of the airplanes, resulting in losses which must yet be determined.

As the guardianships correctly point out, no evidence was offered concerning the fair rental value of the two airplanes. The trial court must take further evidence to determine the

proper amount of damages, if any, relating to leases of the aircraft. Therefore, this case is remanded for further proceedings consistent with this opinion.

WILLIAMS and WEBSTER, JJ., concur.