[No. 11856-8-III.   Division Three.   May 13, 1993.]

ELLA BARR, *Individually and as Personal Representative, Appellant,* v. GERALD G. DAY, ET AL, *Respondents.*

834

*Robert B. Crary* and *Crary & Clark, P.S.,* for appellant.

*Sam B. Franklin* and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.; James S. Craven, Philip J. Van de Veer,* and *Evans, Craven & Lackie, P.S.,* for respondents.

SWEENEY, J. — Ella Barr, individually and as the personal representative of the estate of Lewis Barr, appeals a summary judgment in favor of Randall Stamper, Gerald Day and Steven Stocker. The court dismissed Mrs. Barr's claims for negligence, breach of contract, and breach of fiduciary duties against her attorneys, Mr. Stamper and Mr. Day, ruling each was barred by the doctrine of collateral estoppel. Mr. Stocker served as Mr. Barr's guardian ad litem. His dismissal was based on "witness immunity". We find unresolved genuine issues of material fact and, therefore, reverse and remand for trial.

### FACTUAL BACKGROUND

On October 21, 1982, Lewis Barr, age 51, suffered a severe head injury while working aboard a tugboat on Puget Sound. He was in a coma for a prolonged period of time; he suffered brain damage, periodic seizures, and personality changes. His treatment included neurosurgery. He incurred medical expenses of approximately $100,000.

In December of 1982, Mr. Barr retained the services of attorney Gerald Day to pursue a claim for relief pursuant to the Jones Act, 46 U.S.C. app. § 688.[1] Mr. Barr signed a contingency fee agreement which provided in part that

> [f]or the services rendered and to be rendered, client will pay to attorney a fee based upon the amount received by client after deduction of the costs incurred in connection with this matter as follows:
> a. If the matter proceeds to trial, 33-⅓% of the amount received.
> b. If the matter is settled before the commencement of trial, an amount between 25% and 30% of the amount received, depending on how near to trial settlement is made.

The agreement made no provision for fees in the event of a structured settlement (deferred or periodic payments). Mr. Barr and his wife, Ella, sued Mr. Barr's employer, Crowley Maritime Corporation, on July 2, 1985.[2] On July 19, Mr. Day wrote to Mrs. Barr requesting that she sign a second contingency fee agreement, which provided in part:

> If client accepts a settlement or is awarded a judgment payment of which is deferred in whole or in part, the fee shall be based upon the present value, at the time of settlement or judgment, of the recovery; the entire fee so calculated shall be paid from and upon receipt of the initial cash payment.

Mr. Day told her that the fee agreement contemplated the possibility of a settlement based upon deferred payments. He further informed her that even though the matter was "some distance from trial", he was expecting to charge a 30 percent fee because he had "been working on the case so long". Mrs. Barr signed the agreement.

---

[1] The Jones Act grants "[a]ny seaman who shall suffer personal injury in the course of his employment . . ." the right to seek damages in a jury trial against his employer. While proof of negligence is essential to recovery, the employer's negligence need only be slight and merely a contributing cause of plaintiff's injuries. *Ward v. American Haw. Cruises, Inc.*, 719 F. Supp. 915 (D. Haw. 1988); *Wilkerson v. Teledyne Movible Offshore, Inc.*, 496 F. Supp. 1279 (E.D. Tex. 1980).

[2] Also named in the suit was Puget Sound Tug and Barge Company. The claim was later amended to add Reynold Power Transmission Corporation and Besco, Inc., as third party defendants. Reynold Power manufactured the chain which broke and Besco is the corporation which sold the chain to Crowley Maritime Corporation.

Mr. Barr's consumption of alcohol increased following the accident and his condition continued to deteriorate. Mrs. Barr contacted attorney Randall Stamper and indicated a desire to discharge Mr. Day. On July 7, 1986, Steven Stocker, a former law associate of Mr. Stamper's, was appointed Mr. Barr's guardian ad litem. Mr. Stamper prepared the order appointing Mr. Stocker. The order stated that Mr. Stocker has the "requisite knowledge, training or experience to perform the duties required by RCW 11.88.090 . . ." and is appointed guardian ad litem to

> represent the ward with reference to any Petition or proceeding in which the ward may have an interest, and to contest any Petition or proceeding herein in the same manner as any other interested person might contest the same if in the best interests of the ward, LEWIS D. BARR.

Pursuant to RCW 11.88.090, Mr. Stocker filed a guardian ad litem report recommending that Mrs. Barr be appointed her husband's guardian. On July 21, the court declared Mr. Barr incompetent and appointed Mrs. Barr the guardian of his person and estate.

On July 22, Mr. Stamper prepared a letter for Mrs. Barr's signature advising Mr. Day that he was terminated as the Barrs' attorney. For reasons unclear in the record, Mr. Day did not withdraw as counsel. Instead, Mr. Stamper associated with Mr. Day. Mrs. Barr apparently acquiesced in this arrangement.

On January 18, 1987, the Barrs were offered a structured settlement, which included several annuity options, each providing for a guaranteed payment for 5 years. The Barrs and Mr. Stamper discussed the options and selected one that provided for a total payout of $865,005, if Mr. Barr (age 56) lived until the year 2006 (age 76). Mr. Stamper asked Mr. Stocker to review the proposed settlement with the Barrs. Mr. Stocker telephoned Mr. Barr's physician to ask about Mr. Barr's current medical condition. He was informed that Mr. Barr still suffered from chronic alcoholism, organic brain injury, fluctuating moods and temperament, and very poor memory.

Mr. Stocker did not review each of the settlement options with the Barrs; he discussed only the option they had selected based upon their discussions with Mr. Stamper. Mr. Stocker asked the Barrs if they agreed to the 30 percent contingency fee called for in their agreement. He did not advise the Barrs that the fees would be, as he later described, on "the high end" if Mr. Barr died shortly after the settlement was entered. Mr. Stocker did not discuss alternative methods for calculating fees; methods other than a percentage share of a total annuity's present cash value, assuming a normal life expectancy. Mr. Stocker did not know whether an attorney fee award based on maintenance and cure was customary;[3] he did not raise the issue with the Barrs or with Mr. Stamper. He recommended that the Barrs accept the settlement rather than proceed to trial.

Mr. Stamper hired an economist to calculate the present cash value of the selected annuity option assuming Mr. Barr lived to age 76. The economist was not asked to consider Mr. Barr's health problems. Nor was he requested to calculate the present value of the selected guaranteed 5-year payment. The economist calculated the present value of Mr. Barr's lifetime annuity at $392,814.

The total value of the settlement offer was $1,079,493.27 calculated as follows:

| | |
|---|---|
| Lifetime Annuity (present cash value assuming life to age 76) | $392,814.00 |
| Settlements from: | |
| Reynold Power Transmission Corp. | 313,333.00 |
| Crowley Maritime Corporation | 183,333.00 |

[3]The right to maintenance and cure is a remedy under general maritime law. It is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service. *Vaughan v. Atkinson*, 369 U.S. 527, 531, 8 L. Ed. 2d 88, 82 S. Ct. 997 (1962). Maintenance is a per diem living allowance, paid so long as the seaman is outside the hospital and has not reached the point of maximum cure. Cure involves the payment of therapeutic, medical, and hospital expenses not otherwise furnished to the seaman, until the point of maximum cure. Maintenance and cure are due without regard to the negligence of the employer. *Gaspard v. Taylor Diving & Salvage Co.*, 649 F.2d 372, 374 n.3 (5th Cir. 1981), *cert. denied*, 455 U.S. 907 (1982).

| | |
|---|---:|
| Besco, Inc. | 3,000.00 |
| Maintenance and Cure | 180,935.45 |
| Wage Loss Payments | 5,850.00 |
| Medical Payments | 227.82 |
| | $1,079,493.27 |

Crowley had paid the maintenance and cure award and the medical and wage loss payments.[4] Mr. Stamper and Mr. Day calculated their 30 percent contingency fee award based on $1,079,493.27. The attorney fee award totaled $323,847.96.

On June 17, 1987 (4 years and 8 months after the injury), the Barrs petitioned the Superior Court for approval of the settlement. At the settlement hearing, Mr. Stocker testified that, as the guardian ad litem, he had reviewed the settlement proposal with the Barrs and "discuss[ed] other items that possibly could effect [sic] the ultimate outcome." He testified that he believed the proposed settlement exceeded what the Barrs could achieve at trial in light of Mr. Barr's injury and prior alcohol use. The court asked Mr. Stocker if any special skill was required on the part of an attorney to prosecute a Jones Act claim. Mr. Stocker responded that it would require the "same ability as is required in any lawsuit . . .".

Mrs. Barr testified that she approved of the settlement. The court asked whether she had reviewed the fee agreement. Mrs. Barr responded, "I have". The court then asked if she felt the fees were fair and reasonable. Mrs. Barr, who has an 8th grade education and minimal work experience, responded, "Um hm. . . . Um hm, I do." Mr. Barr, who had been declared incompetent by the court, was asked whether he believed the 30 percent attorney fee was appropriate. Mr. Barr responded, "Yes. Well acceptable with me." The court approved the settlement and the award of attorney fee. On March 17, 1989, 1 year and 9 months after the settlement was approved, Mr. Barr died. Over the course of the 5-year payment, the Barrs received a total of $144,551. Again, the attorney fee award totaled $323,847.96.

---

[4]Crowley also paid a pension and welfare trust award of $6,077.82 to the Barrs.

On April 30, 1990, Mrs. Barr, individually and as the personal representative of Mr. Barr's estate, filed an action against Messrs. Day, Stamper and Stocker. She alleged that Mr. Day and Mr. Stamper breached the contingency fee agreement by charging a fee in excess of the agreed amount,[5] were negligent in failing to properly and adequately evaluate the annuity, were negligent in failing to properly inform and advise her of the possibility of receiving a lump sum instead of a structured settlement, and had breached their fiduciary duties by miscalculating the value of the structured settlement. Mrs. Barr alleged Mr. Stocker, as guardian ad litem, had failed to protect the interests of Mr. Barr.

Messrs. Stamper, Day and Stocker moved for summary judgment. Mr. Stamper and Mr. Day contended that Mrs. Barr's claims were barred by collateral estoppel and that Mrs. Barr could not establish a prima facie case of legal malpractice. Mr. Stocker argued that he was protected by absolute witness immunity, citing to *Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc.*, 113 Wn.2d 123, 776 P.2d 666 (1989). The court granted the summary judgments. This appeal follows.

## STANDARD OF REVIEW

We make the same inquiry as the trial court when reviewing a summary judgment. *Grimsrud v. State*, 63 Wn. App. 546, 548, 821 P.2d 513 (1991); *Kennedy v. Sea-Land Serv., Inc.*, 62 Wn. App. 839, 855, 816 P.2d 75 (1991). Summary judgment is appropriate only when the record demonstrates there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Meaney v. Dodd*, 111 Wn.2d 174, 177-78, 759 P.2d 455 (1988). We consider the evidence in a light most favorable to the nonmoving party. *Stephens v. Seattle*, 62 Wn. App. 140, 143, 813 P.2d 608, *review denied*, 118 Wn.2d 1004 (1991).

---

[5]Her argument was based on the theory that Mr. Stamper and Mr. Day did not collect 30 percent of the total recovery received in the cash settlement, but had collected 30 percent of the present value of an annuity based upon Mr. Barr's death at age 76.

COLLATERAL ESTOPPEL

Mrs. Barr contends the court erred in granting summary judgment in favor of Mr. Stamper and Mr. Day because the four elements of collateral estoppel are not present.

■ The doctrine of collateral estoppel bars the relitigation of an issue or determination of a fact after the party sought to be estopped has had a full opportunity to present his or her case. *Lutheran Day Care v. Snohomish Cy.*, 119 Wn.2d 91, 113-14, 829 P.2d 746 (1992), *cert. denied,* ___ U.S. ___, 122 L. Ed. 2d 353, 113 S. Ct. 1044 (1993); *Dunlap v. Wild*, 22 Wn. App. 583, 588, 591 P.2d 834 (1979). The criteria for its application are:

> (1) the issue decided in the prior adjudication must be identical with one presented in the action in question; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted must have been a party or in privity with a party to the prior litigation; and (4) application of the doctrine must not work an injustice.

(Italics omitted.) *Dunlap*, at 590; *Girtz v. New Hampshire Ins. Co.*, 65 Wn. App. 419, 423, 828 P.2d 90 (1992); *Jensen v. Torr*, 44 Wn. App. 207, 213, 721 P.2d 992, *review denied,* 107 Wn.2d 1004 (1986). The party asserting application of the doctrine of collateral estoppel has the burden of establishing the four factors. *McDaniels v. Carlson*, 108 Wn.2d 299, 303, 738 P.2d 254 (1987); *Bradley v. State*, 73 Wn.2d 914, 917, 442 P.2d 1009 (1968). Because we find the settlement hearing ended in a final judgment and that Mrs. Barr was a party to the earlier proceeding, we address only whether issues of fact exist as to the first and fourth elements.

Presence of Identical Issues. At the settlement hearing, Mr. Stamper advised the court that the structured settlement included an annuity with a current cash value of $392,814. He stated that "after a lot of discussion with the Barrs and with the economist, it was determined that this [payment option] would be in Mr. Barr's best interests." Mr. Stamper presented the value of the settlement, including the structured annuity, at $1,079,493.27.

Mr. Barr testified that he believed the 30 percent contingency fee award was acceptable. He, however, was legally incompetent. We therefore focus on the examination of Mrs. Barr to determine whether the causes of action alleged are identical to the issues presented at the settlement hearing.

Mr. Stamper asked Mrs. Barr if she had reviewed the settlement with Mr. Stocker. She answered, "Right". He asked her whether she agreed with the settlement. She responded, "Yes sir". She was also asked several questions pertaining to her loss of consortium claim.[6] The court's questioning of Mrs. Barr was limited to the following dialogue:

> THE COURT: Since you are his general guardian you have reviewed the fees and the fee agreement?
> MRS. BARR: I have.
> THE COURT: And Mr. Stocker has been appointed the Guardian ad Litem. Did you discuss the fees of his as well as that of Mr. Stamper's?
> MRS. BARR: Right.
> THE COURT: Do you feel they are fair —
> MRS. BARR: Um hm.
> THE COURT: — and reasonable?
> MRS. BARR: Um hm, I do.

Neither Mr. Stamper nor the court asked Mrs. Barr if she understood that the fee award would remain the same if Mr. Barr died shortly following the settlement. Mrs. Barr was not asked if she had been advised of other methods of calculating fees with her attorneys or whether Mr. Barr's health problems had been taken into account in determining the present value of the guaranteed annuity. The court did not question the propriety of taking a percentage share of the maintenance and cure.[7]

---

[6]One hundred thousand dollars of the settlement was designated as payable to Mrs. Barr for her loss of consortium.

[7]An employee is not generally entitled to attorney fees for an employer's tardiness in providing maintenance and cure, absent a finding that the employer's action has been callous, recalcitrant, willful or persistent. *Ober v. Penrod Drilling Co.,* 726 F.2d 1035 (5th Cir. 1984); *see Vaughan v. Atkinson,* 369 U.S. 527, 8 L. Ed. 2d 88, 82 S. Ct. 997 (1962). In the instant case, the court was not made aware of any willful refusal by Mr. Barr's employer to pay the maintenance and cure due.

■ Collateral estoppel should not be applied to an issue which was only tangential to a substantial issue in the prior litigation. *In re Richland Hyatt House, Inc.*, 18 Wn. App. 426, 430, 568 P.2d 825 (1977), *review denied*, 89 Wn.2d 1019 (1978). The substantial issue at the settlement hearing was whether the settlement offered was reasonable. The issues raised by Mrs. Barr's complaint relate to the conduct of her attorneys — did her attorneys make a full disclosure advising her of all matters relating to fees. The settlement hearing did not address these concerns.[8] Accordingly, the issues presented are not identical.

■■ Resulting Injustice. The requirement that collateral estoppel not work an injustice focuses primarily on whether a prior adjudication offered a full and fair hearing. *Robinson v. Hamed*, 62 Wn. App. 92, 100, 813 P.2d 171, *review denied*, 118 Wn.2d 1002 (1991). Because Mrs. Barr urges that the application of the collateral estoppel doctrine works an injustice, she has the burden of proof. *PUD 1 v. Tombari Family Ltd. Partnership*, 117 Wn.2d 803, 805, 819 P.2d 369 (1991).

Mrs. Barr contends a full and fair hearing did not occur because evidence presented at the settlement hearing did not address (1) how the annuity was valued; (2) whether health concerns affected the value; (3) the propriety of charging a fee based on the present cash value,[9] assuming a normal life expectancy, given Mr. Barr's significant health problems; and (4) whether these considerations were disclosed to the client.

Application of the collateral estoppel doctrine would preclude Mrs. Barr from challenging the actions of her attor-

---

[8]The dissent concludes that the 30 percent contingent fee agreement was open and "aboveboard". Dissent, at 850-51. We defer to the trier of fact for such a factual determination.

[9]While the dissent notes that the Barrs agreed to pay 30 percent of the settlement in attorney fees, including 30 percent of the present cash value of the annuity, dissent, at 849-50, the issues raised by Mrs. Barr include whether it was proper to calculate the present cash value of the 5-year annuity without factoring in Mr. Barr's health problems, which included chronic alcoholism and organic brain injury.

neys, including their failure to discuss possible alternative valuations of Mr. Barr's annuity given his poor health. 3A C.J.S. *Annuities* § 12(b), at 879 (1973) (unusual vigor or frailty of constitution or health which may either lengthen or shorten the probable duration of the life on which the annuity depends should be taken into consideration). Application of the doctrine of collateral estoppel, therefore, works an injustice on Mrs. Barr. The trial court erred in granting summary judgment in favor of Mr. Day and Mr. Stamper.

■ Our resolution of the issue of collateral estoppel is dispositive as to claims asserted against Messrs. Day and Stamper. We address one further concern. The Rules of Professional Conduct provide a framework and a set of standards for attorneys in the performance of their professional responsibilities. RPC 1.5(a) states that "[a] lawyer's fees shall be reasonable." A contract for attorney fees must be fair and reasonable, free from undue influence and based upon a fair and full disclosure of the facts upon which it is predicated. 15 L. Orland & K. Tegland, Wash. Prac., *Trial Practice* § 463, at 175 (4th ed. 1986). Having calculated the fee on the present value of an annuity assuming Mr. Barr would live 20 more years to age 76, Mr. Stamper and Mr. Day were relieved of any financial risk associated with Mr. Barr's death. The Barrs alone shouldered that risk. At least one consideration for the trier of fact should be — is this reasonable?

### GUARDIAN AD LITEM

In granting summary judgment in favor of Mr. Stocker, the court concluded "that Defendant Steven Stocker is absolutely immune from Plaintiff's claims based on the doctrine of witness immunity...". Mrs. Barr contends the court erred in granting the summary judgment because a guardian ad litem who fails to represent the best interest of a ward should not be protected by immunity. She contends the witness immunity discussed in *Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc.*, 113 Wn.2d 123, 776 P.2d 666 (1989) and judicial immunity discussed in *Babcock v. State*, 112 Wn.2d 83, 768

P.2d 481 (1989), *aff 'd in part, rev'd in part on reconsideration*, 116 Wn.2d 596, 809 P.2d 143 (1991), should not protect Mr. Stocker. We agree.

In *Bruce*, an engineer, testifying as an expert, gave an estimate at trial of the cost required to restore a support wall. The amount actually necessary to restore the wall proved to be double the engineer's estimate. The engineer was sued by the party who had hired him to testify. The court held that "witnesses in judicial proceedings are absolutely immune from suit based on their testimony" to "preserve the integrity of the judicial process by encouraging full and frank testimony." *Bruce*, at 125-26. The language in *Bruce* is broad: "immunity of expert witnesses extends not only to their testimony, but also to acts and communications which occur in connection with the preparation of that testimony." *Bruce*, at 136.

▮ Here, Mr. Stocker testified as a guardian ad litem, not as an expert witness. The judicial process was a settlement hearing. The admission of the engineer's testimony in *Bruce* was within the trial court's discretion and was admitted for the purpose of assisting the trier of fact. Mr. Stocker's role was statutorily imposed and very different. His duty was to "represent the best interests of the alleged incapacitated person . . .". RCW 11.88.090(2).

Moreover, in *Bruce*, the plaintiff's cause of action against his witness engineer was for negligence in providing expert testimony. *Bruce*, at 135. Mrs. Barr does not claim Mr. Stocker was negligent in testifying. Her complaint alleges Mr. Stocker failed "to protect the interests" of Mr. Barr. Witness immunity should not extend to a guardian ad litem under these circumstances.

▮ Nor do we believe that Mr. Stocker should have absolute judicial immunity because he was a guardian ad litem. Mr. Stocker was appointed as a guardian ad litem by the court, but his job was to act as an advocate for his ward, Mr. Barr. Mr. Stocker did not perform functions traditionally performed by the court. *See McKenna v. Edwards*, 65 Wn.

App. 905, 912, 830 P.2d 385, *review denied*, 120 Wn.2d 1003 (1992).

The analysis in *Collins ex rel. Collins v. Tabet*, 111 N.M. 391, 806 P.2d 40 (1991) is persuasive. *Collins* adopts a functional approach in determining whether a guardian ad litem should be granted absolute immunity:

> We hold that a guardian ad litem, appointed in connection with court approval of a settlement involving a minor, is absolutely immune from liability for his or her actions taken pursuant to the appointment, provided that the appointment contemplates investigation on behalf of the court into the fairness and reasonableness of the settlement in its effect on the minor. We also hold, however, that if the guardian's appointment does not contemplate actions on behalf of the court but instead representation of the minor as an advocate, or if the guardian departs from the scope of appointment as a functionary of the court and instead assumes the role of a private advocate for the child's position, then the guardian is not immune and may be held liable under ordinary principles of malpractice.

*Collins*, at 395. A guardian ad litem is absolutely immune when testifying or making reports and recommendations to the court as an actual functionary or arm of the court. *Collins*, at 396 (citing *Forrester v. White*, 484 U.S. 219, 224, 98 L. Ed. 2d 555, 108 S. Ct. 538, 542 (1988)). The reasons for conferring absolute immunity on those who perform their roles as an integral part of the judicial process and agents of the court are well established. Immunity protects participants in the judicial process from harassment, intimidation, and interference with their ability to engage in impartial decisionmaking. *Collins*, at 396 (citing *Briscoe v. LaHue*, 460 U.S. 325, 75 L. Ed. 2d 96, 103 S. Ct. 1108 (1983)); *Ward v. San Diego Cy. Dep't of Social Servs.*, 691 F. Supp. 238 (S.D. Cal. 1988) (guardian acting as extension of the court performing quasi-judicial functions serves to provide the court with independent information; guardian's independent determination is crucial to the court's decision and the threat of civil liability would impair guardian's independent investigation).

When, however, a guardian ad litem acts as an advocate for his client to further the financial interests of the ward, the basic reason for absolute immunity evaporates. The guardian ad litem then "functions in the same way as does any other attorney for a client — advancing the interests of the client, not discharging (or assisting in the discharge of) the duties of the court." *Collins*, at 399. Recognizing that a guardian ad litem must sometimes fulfill dual responsibilities, the court in *Collins* stated that when the guardian's functions embrace primarily the rendition of professional services, the reason for immunity is lacking. *Collins*, at 401. Whether Mr. Stocker was appointed to investigate the reasonableness of the settlement on behalf of the court or whether he was engaged by Mr. Stamper to merely rubber stamp a settlement are questions which must be resolved by a trier of fact, not by this court. *Collins*, at 401. See dissent, at 851-52.

Guardians ad litem are fiduciaries and in that role occupy a position of highest trust.

> [N]o attorney should ever blindly enter an appearance as guardian ad litem and allow a matter to proceed without a full and complete investigation into the facts and law so that his [or her] clients will be fairly and competently represented and their rights fully and adequately protected and preserved.

*Collins*, at 400 (quoting *Bonds v. Unknown Heirs*, 64 N.M. 342, 345, 328 P.2d 597 (1958)). Guardians ad litem have been found liable for misappropriation of funds and for breach of fiduciary relationship. *Smith v. Olympic Bank*, 103 Wn.2d 418, 693 P.2d 92 (1985) (guardian breaches fiduciary duty by depositing ward's checks in guardian's personal account); *In re Kelley*, 193 Wash. 109, 74 P.2d 904 (1938) (judgment may be entered against guardian for misappropriation); *In re Deming*, 192 Wash. 190, 73 P.2d 764 (1937) (guardian breaches duty, surety liable); *In re Eisenberg*, 43 Wn. App. 761, 769, 719 P.2d 187 (1986) (guardian personally liable for breach of fiduciary duty). Shielding a guardian ad litem, as a matter of law,

from all potential liability on the basis of witness or judicial immunity is not proper. The order of summary judgment is reversed.

The decisions of the trial court are reversed and the case is remanded for trial.

MUNSON, J., concurs.

THOMPSON, A.C.J. (dissenting) — I agree with the legal principles relied on by the majority. However, I do not agree that they are applicable to the facts in this case. I therefore respectfully dissent.

The Superior Court based its summary dismissal of Mrs. Barr's action against the defendants on its determination that (1) her claims were barred as a matter of law by collateral estoppel, and (2) the guardian ad litem was entitled to witness immunity. I would affirm the summary dismissal of Mrs. Barr's causes of action, but for different reasons.

In my view, Mrs. Barr failed to establish a prima facie case of negligence. Liability for legal malpractice requires proof of four elements:

> (a) the existence of an attorney-client relationship; (b) the existence of a duty on the part of the lawyer; (c) failure to perform the duty; and (d) the negligence of the lawyer must have been a proximate cause of the damage to the client.

*Martin v. Northwest Wash. Legal Servs.*, 43 Wn. App. 405, 408, 717 P.2d 779 (1986) (quoting *Sherry v. Diercks*, 29 Wn. App. 433, 437, 628 P.2d 1336, *review denied*, 96 Wn.2d 1003 (1981)). *See also Stangland v. Brock*, 109 Wn.2d 675, 679, 747 P.2d 464 (1987). Evidence of the third element, breach of duty, is lacking here.

The record is clear the attorneys fully advised the Barrs of the available settlement options, and the Barrs indicated in writing their choice of the options. The Barrs were aware the annuity had only a 5-year guaranty and attorney fees were calculated based upon the present value of the annuity, assuming a 20-year life expectancy for Mr. Barr. Calculation of attorney fees on a present value basis has been recognized

by our Supreme Court as an accepted practice. *Ravsten v. Department of Labor & Indus.*, 108 Wn.2d 143, 158, 736 P.2d 265 (1987); *Perez v. Pappas*, 98 Wn.2d 835, 840, 659 P.2d 475 (1983). The Barrs knew as well as anyone there was no guaranty that Mr. Barr would live for 20 more years. There is nothing in the record which suggests his health was so impaired that it was unreasonable to predict he might live that long. While Mr. Barr was a chronic alcoholic, his physician acknowledged that persons with such a condition often live to old age. The Barrs chose this settlement option in part because of Mr. Barr's alcoholism — it guaranteed a fixed monthly amount which would be available to pay for Mr. Barr's needs. There was justifiable concern that Mr. Barr might squander a lump sum settlement. The Barrs were not misled or misinformed by their counsel. As stated in 2 R. Mallen & J. Smith, *Legal Malpractice* § 24.36, at 521 (3d ed. 1989), "[a]side from the speculative nature of the contentions, hindsight challenges to recommended settlements have generally been protected as judgment calls." The settlement was and is fair and reasonable.[10]

Mrs. Barr also failed to establish a prima facie case that the defendants breached any fiduciary duty owed her or her husband when they calculated attorney fees based on the present value of the annuity. Mr. Barr signed a contingent fee agreement with Gerald Day. He agreed to pay as fees a percentage of any amount he *received*. Three years later, on August 7, 1985, Mrs. Barr signed another agreement with

---

[10]The only viable issue that seems to exist involves that portion of the attorney fee applicable to "maintenance and cure". Plaintiff contends such payments generally are made as a matter of right. On the other hand, Mr. Day states that at one point Crowley Maritime attempted to discontinue the payments based on an argument that Mr. Barr had recovered from his injuries and his remaining disabilities were the result of his alcoholism. Mr. Day contends his services insured the continuation of the payments and, therefore, they are subject to fees. The fact the Barrs are not legally entitled to an attorney fee award from Crowley Maritime for legal fees they incurred in collecting maintenance and cure, *see Ober v. Penrod Drilling Co.*, 726 F.2d 1035 (5th Cir. 1984), cited by the majority, does not mean they are relieved from personal responsibility for paying their own attorney. Also, it is clear from the fee agreement the Barrs agreed to pay a fee on any amount recovered.

Mr. Day agreeing to pay him a percentage of the present value of any structured settlement entered into. In July 1986, Mrs. Barr was appointed Mr. Barr's guardian and hired Mr. Stamper as an attorney. Mr. Day continued on as associate counsel. There is no evidence as to a separate fee agreement reached between the Barrs and Mr. Stamper until the settlement itself was approved by the court.[11] Then the Barrs agreed to pay 30 percent of the settlement in attorney fees, including 30 percent of the present cash value of the annuity.

The law views fee agreements entered into at the inception of the attorney-client relationship differently from fee agreements entered into later:

> Because the fiduciary obligations arise only when there is an attorney-client relationship, the attorney is generally free to negotiate the fee with a prospective client. Before the attorney undertakes to represent a client, the obligation of undivided loyalty does not exist and the parties may bargain for the legal services since the parties deal with each other at arm's length. . . .
>
> . . . .
>
> [But o]nce the attorney-client relationship is established, any modification of the fee arrangement becomes subject to the fiduciary obligations [including the duty of full disclosure] . . . The courts have generally given particular attention and scrutiny to fee contracts made or altered during the attorney-client relationship.

(Footnotes omitted.) 1 R. Mallen & J. Smith, *Legal Malpractice* § 11.22, at 692-94 (3d ed. 1989). In *Perez*, the court cited the foregoing treatise and stated at page 840:

> Oftentimes, structured settlements do not readily lend themselves to the usual course of calculating fees pursuant to contingent fee agreements. Therefore, *when a structured settlement is reached the attorney and client may have to reconsider and discuss the calculation of fees.*

(Italics mine.)

Here, a structured settlement became the best option, making it necessary to determine how the fee amount should

---

[11]Since Mr. Day and Mr. Stamper continued to work together, both could continue to rely on the agreements reached between the Barrs and Mr. Day.

be computed. That was done. Based on the undisputed facts, I would hold the agreement was open, aboveboard, disclosed to the guardian ad litem, and approved by the court.

The court's concern in *Perez* as to violation of a fiduciary duty was directed toward the fact counsel did not reduce the annuity settlement to present value, but took a fee on the entire projected payment. That did not occur in this case.

While there were other methods for computing the attorney fee, the fact one method of computation now seems more beneficial to Mrs. Barr does not alone establish a breach of a fiduciary duty. Mrs. Barr did not offer any affidavits or expert testimony to establish that the fee arrangement or the method of reaching the agreement breached any standard of care. As the court stated in *Hansen v. Wightman*, 14 Wn. App. 78, 92, 538 P.2d 1238 (1975): "The standard of care required of attorneys does not impose special or different attention to duty because the relationship between attorney and client is a fiduciary one. The care exercised must still be reasonable."

I would also affirm the dismissal of Mrs. Barr's negligence action against Steven Stocker, the guardian ad litem. As with Mr. Stamper and Mr. Day, there is no evidence Mr. Stocker breached the standard of care. Alternatively, it appears Mr. Stocker is entitled to judicial immunity from liability arising from his investigation of the reasonableness of the settlement on behalf of the court. *See Collins ex rel. Collins v. Tabet*, 111 N.M. 391, 395, 806 P.2d 40, 44 (1991), which held:

> [A] guardian ad litem, appointed in connection with court approval of a settlement involving a minor, is absolutely immune from liability for his or her actions taken pursuant to the appointment, provided that the appointment contemplates investigation on behalf of the court into the fairness and reasonableness of the settlement in its effect on the minor.

This same rationale was applied in *Bader v. State*, 43 Wn. App. 223, 226, 716 P.2d 925 (1986). The majority finds an issue of fact as to whether Mr. Stocker rendered professional services on behalf of the Barrs. But I see nothing in the record suggesting he acted as an advocate for Mr. Barr in

852

the litigation itself. He reported fully to the court. Nothing was hidden. No actual or constructive fraud was demonstrated or alleged by Mrs. Barr.

This settlement was reached after full disclosure. As noted by the judge at the settlement hearing, it was a good settlement. It remains a good settlement. Mrs. Barr's allegations of wrongdoing do not raise issues of fact sufficient to reopen the entire settlement and attorney fee agreement. I would affirm.

Review granted at 122 Wn.2d 1016 (1993).